**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **REGINALD KEITH BALL,** Plaintiff | ) | Civil Action No.: 7:15cv00003 |
| v. | ) | **MEMORANDUM OPINION** |
| **CHRISTIE MICHELLE BAILEY,** Defendant. | ) | By: PAMELA MEADE SARGENT United States Magistrate Judge |

The pro se plaintiff, Reginald Keith Ball, an inmate formerly incarcerated at Keen Mountain Correctional Center, ("Keen Mountain"), brings this civil rights action pursuant to 42 U.S.C. § 1983, against the defendant, Christie Michelle Bailey, a former Virginia Department of Corrections, ("VDOC"), employee, assigned to Keen Mountain as a case manager/counselor. In his Complaint, Ball alleges that Bailey violated his Eighth Amendment right to be free from cruel and unusual punishment by sexually abusing/assaulting him on multiple occasions from approximately March 20, 2013, through May 31, 2013, while he was a VDOC inmate and she was a VDOC employee; that the same conduct constituted the state torts of assault and battery; and that this conduct further resulted in the intentional infliction of emotional distress under state law. (Docket Item No. 1-1, ("Complaint.")[1] Bailey has filed a Motion For Summary Judgment, (Docket Item No. 32) ("Motion"), alleging that she is entitled to summary judgment on Ball's Eighth Amendment claim because there is evidence in the record that so blatantly contradicts the allegations contained in his Complaint so as to utterly discredit them. Ball has responded to the Motion, and both parties have filed replies. The

[1] While Docket Item No. 1 is docketed as the "Complaint" in this case, it is merely the form used by inmates to file a § 1983 suit. Instead Docket Item No. 1-1, a handwritten document titled "Verified Complaint For Damages," contains all of the factual allegations in support of Ball's claims. Therefore, Docket Item No. 1-1 will be referred to herein as the Complaint.

court is of the opinion that no hearing is necessary before ruling on the Motion. The Motion is before the undersigned upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). For the reasons discussed herein, the Motion will be denied.

## *I. Facts*

According to Ball, between March 20 and May 31, 2013, Bailey sexually abused/assaulted him on numerous occasions while he was incarcerated at Keen Mountain where she was employed as a case manager/counselor. In particular, during a meeting in Bailey's office, he requested her assistance in seeking protection after denouncing ties to a prison gang. She agreed to help him, but asked what he would do for her in return. Bailey informed Ball that she "is not what [Ball] think[s] she is[,]" and she began to rub her feet against Ball's leg underneath the desk. (Complaint at 4-5.) Ball was uncomfortable, but when he began to leave, Bailey advised him to sit down, as she was not finished "enrolling [him] in the program." (Complaint at 5.) Bailey continued making sexual comments to Ball, including how "kissable his lips looked," and she inquired whether he had ever "been with a white girl" because she had always wanted to "have sex with a black guy." (Complaint at 5.) Bailey pressed her body against his, pinning him against the wall. She grabbed Ball's penis and began kissing him "aggressively." (Complaint at 6.) Ball was scared and told Bailey to stop before someone caught them and blamed him for this conduct, but Bailey told him to "shut up" because she was "in control of all of that." (Complaint at 6.) Bailey began performing oral sex "very aggressive[ly]" on Ball. (Complaint at 6.) When Bailey stopped, he simply left and returned to his cell. According to Ball, he was "in shock, confused and nervous about what just happened," and he was afraid to "snitch" on Bailey. (Complaint at 7.)

On or about April 12, 2013, Bailey, who was Ball's program teacher, asked him to remain after class. Once class was dismissed, she asked Ball to return a DVD to a storage closet. Bailey followed him into the closet, pushing him hard against the wall with her forearm and aggressively pulled his pants down and began performing oral sex on him. Then, "Bailey pulled her pants down, grabbed [Ball's] penis and inserted [it into] her vagina." (Complaint at 8.) Ball told Bailey to stop twice and to leave the closet for fear that a correctional officer would discover them, but he felt "physically helpless" to her advances, given her aggressive behavior. (Complaint at 8.) Bailey repeatedly commented that Ball's penis was "her's" and that she "want[s] it when she wants it." (Complaint at 8.) Once done, Bailey informed Ball that he deserved "good-time credit allowance Level 1 for that[,]" and she would make sure of it. (Complaint at 9.)

On yet another occasion, Bailey came to Ball's cell requesting that he show her his penis. Bailey also continued to call for Ball to come to the counselor's office to demand that he have sexual intercourse with her and to perform oral sex upon Ball. Bailey informed Ball that she had control over all the officers in the unit and that she had a relationship with Unit Sergeant Smith. She explained that she flirted with the officers, and they would shake down whomever she instructed them to and place false charges against offenders. Bailey advised Ball if he ever needed anything done, to let her know because she controlled things in the unit and had all the "correctional officers wrapped around her finger." (Complaint at 9.)

Ball alleges that one of these incidents of forced sexual intercourse occurred during Bailey's menstrual cycle, and he feared he may have contracted "sexual disease such as HIV, Hepatitis, etc." (Complaint at 10.) At some point, Bailey informed Ball she thought she was pregnant, she loved him, and she did not know

what she would do if he was not there for her, stating that she would kill herself and it would be Ball's fault. According to Ball, Bailey began to place money into his inmate trust account and phone account, and she wrote him love letters and gave him sexually explicit photographs of herself, both of which she hand-delivered. Prison officials discovered some of these letters and the photographs in Ball's property. Ball alleges that Bailey was terminated as a result of these incidents, as well as engaging in sexually inappropriate relations with other offenders and officers. Ball further alleges that he and Bailey engaged in sexual intercourse five times and that Bailey performed oral sex on him four times, all over the course of two to three months. Aside from these incidents, Ball claims that Bailey touched his buttocks and rubbed and kissed him "every chance she got," which was at least twice weekly, during the times he was enrolled in the classes Bailey instructed. (Complaint at 12.)

On May 21, 2013, Ball was placed in the Special Housing Unit – Segregation, pending an investigation into these alleged incidents. Assistant Chief Investigator Ron Hall and Keen Mountain Institutional Investigator C. Arms conducted this investigation. They interviewed Ball and informed him that they had received some information and evidence that Ball was sexually involved with Bailey. Ball informed Investigator Hall that he wished to cooperate with the investigation, but not at that time, as he feared his safety and that of his family if word got out to other inmates and gang members that he had "snitched." According to Ball, he acknowledged to Hall that he and Bailey engaged in an inappropriate sexual relationship, but did not explain the full extent of the acts due to fear of being criminally charged.

The Commonwealth's Attorney for Buchanan County, Virginia, attempted to bring criminal charges against Bailey for carnal knowledge of an inmate or

prisoner, in violation of Virginia Code Annotated § 18.2-64.2.[2] (Complaint at 12.) The facts in the indictment state, in part:

> On or about April 1, 2013 through May 31, 2013, [Christie Michelle Bailey] did unlawfully and feloniously while being an employee or contractual employee of, or volunteer with, a state or local correctional facility or regional jail, the Department of Corrections, a secure facility or detention home did carnally know, without the use of force, threat or intimidation an inmate who has been committed to jail or convicted and sentenced to confinement in a state or local correctional facility or regional jail.

*See* Att. 2 to Docket Item No. 1. The grand jury returned "not a true bill" on January 13, 2014, and no criminal charges were brought against Bailey.

Bailey denies the vast majority of Ball's allegations. Most importantly, she specifically denies each of the instances of sexual abuse/assault that Ball describes in detail in his Complaint. Bailey denies Ball's allegation that she performed oral sex on him on approximately four occasions and engaged in sexual intercourse with him on approximately five occasions, all over a two- to three-month period. She further denies his allegations of touching his buttocks, rubbing and kissing him every chance she got. Bailey denies manipulating, controlling or abusing Ball. She further denies Ball's allegation that she told him she thought she was pregnant, that she loved him, that she did not know what she would do without him and that she would kill herself, which would be his fault. However, Bailey does admit to depositing money into Ball's inmate trust account and phone account, as well as

[2] Virginia Code Annotated § 18.2-64.2 states, in part, as follows: "An accused is guilty of carnal knowledge of an inmate … if he is an employee … with … the Department of Corrections … is; in a position of authority over the inmate …; knows that the inmate … is under the jurisdiction of … the Department of Corrections …; and carnally knows, without the use of force, threat or intimidation (i) an inmate who has been committed to jail or convicted and sentenced to confinement in a state or local correctional facility or regional jail or (ii) a … posttrial offender under the jurisdiction of the Department of Corrections … for the purposes of imprisonment…." VA. CODE ANN. § 18.2-64.2 (2014).

writing love letters and transmitting photographs to him. Nonetheless, she disputes the content of the photographs was as described by Ball in his Complaint. Bailey denies that her employment was terminated due to these incidents of sexual abuse/assault, as well as inappropriate sexual relations with other offenders and officers. She also disputes Ball's allegation that her employment with the VDOC was terminated, admitting that she no longer is employed by the VDOC, but claiming that she resigned.

*II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 233 (6th Cir. 1996).

Bailey argues that she is entitled to summary judgment because, under the reasoning of *Scott v. Harris*, 550 U.S. 372 (2007), the evidence of record so utterly discredits Ball's version of the facts, that no reasonable jury could believe it. In making this argument, Bailey directs the court's attention to the following evidence: (1) a grand jury indictment against Bailey, returned as not a true bill; (2) a report of a July 18, 2013, interview of Ball by Assistant Chief Ronald Hall, VDOC, Special Investigative Unit; (3) a handwritten letter dated December 31, 2013, from Bailey to Ball; and (4) a handwritten letter dated July 2, 2014, from Ball to Bailey. For the reasons that follow, I am not persuaded by Bailey's argument.

In *Scott*, the plaintiff motorist alleged excessive use of force after a deputy forced him off the road during a high speed-chase, resulting in serious injury to him. *See* 550 U.S. at 375-76. The plaintiff alleged that, contrary to the defendants' assertions, he remained in control of his vehicle and endangered no drivers or pedestrians during the chase. *See Scott*, 550 U.S. at 379. The Court of Appeals for the Eleventh Circuit accepted the plaintiff's version of the facts and upheld the district court's denial of the defendants' summary judgment motion. *See Scott*, 550 U.S. at 379. However, the United States Supreme Court reversed, stating that, while a court ruling on a summary judgment motion generally should adopt the nonmoving party's version of the facts, that case contained an "added wrinkle," in that there was videotape evidence which captured the events in question. *Scott*, 550 U.S. at 378. This video showed the plaintiff's vehicle careening down narrow roads at night, swerving around other cars and running red lights. *See Scott*, 550 U.S. at 379. The Court noted that the video "quite clearly contradicts the version of the story told by respondent," and that there were "no allegations or indications that [the] videotape was doctored or altered in any way, nor any contention that

what it depicts differs from what actually happened." *Scott*, 550 U.S. at 378. The Supreme Court concluded that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. If one party's version of events "is so utterly discredited by the record that no reasonable jury could have believed him," summary judgment is appropriate. *Scott*, 550 U.S. at 380.

First, I note that a large number of cases in which the *Scott* reasoning is employed to render a nonmoving party's version of the facts utterly discredited are based on videotape or audiotape evidence – the type of evidence that, absent allegations of tampering, leaves no doubt as to whether the nonmoving party's version of events is accurate or inaccurate. Here, there is no such videotape or audiotape evidence that contradicts Ball's version of the events that he alleges occurred between March 20 and May 31, 2013. Second, the Fourth Circuit has illustrated that only in rare instances will *Scott* be used to find that a nonmoving party's version of events is so blatantly contradicted that no reasonable jury could believe it. *See Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011). With those principles in mind, I will turn to the evidence upon which the defendant relies.

The defendant first directs the court's attention to the January 13, 2014, indictment, returned as not a true bill by a Buchanan County, Virginia, grand jury. Bailey claims that Ball's attachment to his Complaint of this indictment against her, returned as "not a true bill," directly contradicts the allegations he makes against her within the Complaint, thereby precluding the existence of any dispute in material fact and rendering her entitled to entry of summary judgment as a

matter of law. Stated another way, she argues that because sexual abuse/assault presupposes some sort of sexual activity, the grand jury's failure to indict her on a charge of carnal knowledge of an inmate would prevent any reasonable jury from returning a verdict for Ball in this case. I disagree. Essentially, what this grand jury found was that probable cause did not exist to criminally charge Bailey with carnal knowledge of an inmate for the period of April 1 through May 31, 2013.[3] This charge specified that the carnal knowledge was *without the use of force, threat or intimidation*. Bailey argues that the grand jury found, therefore, that probable cause did not exist to believe that there was *any* sexual relationship *at all* between the plaintiff and the defendant and, thus, there can be no genuine issue of material fact in dispute as to whether Bailey sexually abused/assaulted Ball as alleged in his Complaint. The court is not persuaded by this argument. The Buchanan County grand jury was asked to consider only whether there was a consensual sexual relationship between Ball and Bailey. It was not asked to consider whether the sexual acts were accomplished through force, threat or intimidation. Furthermore, the grand jury's finding that there was not probable cause to charge Bailey with this crime does not necessitate a finding that no sexual relations occurred.

Also, Ball claims, and Bailey does not dispute, that he was unaware that the Commonwealth's Attorney was pursuing an indictment against Bailey at the time that he did, and Ball was not afforded the opportunity to meaningfully participate in the grand jury proceedings. No one disputes that Ball did not testify at the grand jury proceedings. While Assistant Chief Hall did testify at these grand jury proceedings, Ball contends that he had not relayed to Hall a complete account of the events that transpired between himself and Bailey until November 2014, well after the grand jury had declined to indict Bailey. He explained that he withheld

[3] The court takes note of the fact that this time range does not fully account for the time frame during which Ball alleges in his Complaint that the sexual abuse/assault occurred.

complete information because he was fearful of being labeled a "snitch," and he eventually came forward with a complete account in November 2014 at the urging of his counsel and family.

Additionally, Bailey has provided the court with no case law supporting her argument and, after a review of pertinent case law, the court has been unable to locate any case, in which the reasoning of *Scott* was employed to grant summary judgment in a civil rights action based on a previous failure to criminally indict. Instead, as stated previously, the cases largely involve videotape or audiotape evidence – the type of evidence which can readily "blatantly contradict" factual allegations. Simply put, the indictment, returned as not a true bill, is not on equal footing with the videotape evidence produced in *Scott*, which captured the entirety of the events at issue and left no doubt regarding what actually occurred. The videotape in *Scott* constituted irrefutable evidence and was "blatantly contradictory" to the plaintiff's version of events. Here, the indictment returned as "not a true bill" is just that. It is a finding of a grand jury, based on allegedly incomplete information, that probable cause did not exist to charge Bailey with a state criminal violation for carnal knowledge of an inmate. It is not so blatantly contradictory to the facts contained in Ball's Complaint that no reasonable jury could believe Ball's version of events.

The defendant also directs the court's attention to a July 18, 2013, report of Assistant Chief Hall's interview of Ball, in which Ball admitted that six photographs of an inmate in a prison cell in various stages of undress were, in fact, him, and were taken with a cell phone given to him by Bailey. (Ex. B to Docket Item No. 39.) The defendant emphasizes that Ball did not allege that she forced him to take these photographs, and Ball did not accuse her of sexual abuse/assault during this interview, instead, waiting until November 2014 to do so. First, the

court observes that Ball's "admission" to his identity in the photographs and that they were taken with a cell phone he received from Bailey, was not made verbally, but when he "shook his head in an up and down motion," possibly indicating some reluctance on Ball's part to answer Hall's questions. The report further reflects that Ball specifically informed Assistant Chief Hall that he wanted to cooperate, but was fearful of doing so given his high-ranking status in a gang. Thus, Ball's behavior and statements during the interview actually corroborate the allegations in his Complaint that he was fearful of giving a full account of the events that transpired between himself and Bailey. Additionally, Ball did not state why these pictures were taken or that they were ever transmitted to Bailey. Thus, I find that this report does not blatantly contradict the allegations contained in the Complaint. At most, the interview report could be characterized as inconsistent with the Complaint in some respects. However, it could be viewed as corroborative of some aspects of the Complaint, as well. Therefore, even if this were the type of evidence contemplated by the *Scott* Court, it does not render Ball's allegations utterly discredited.

Next, and related to Assistant Chief Hall's interview report, Bailey directs the court to Hall's Affidavit, in which he states that, after investigating the relationship between Ball and Bailey at Keen Mountain, he discovered no evidence that Bailey had any sexual contact with Ball by use of force, threat or intimidation. (Ex. 1 to Docket Item No. 44.) Again, however, if the investigation did not include a full account by Ball of the events that transpired between them, then this Affidavit cannot be used to totally discredit the allegations in Ball's Complaint. Additionally, Hall's sworn affidavit testimony that his investigation did not reveal any evidence of Bailey's sexual contact with Ball by force, threat or intimidation does not constitute incontrovertible evidence that the same did not occur.

Third, the defendant points to a letter dated December 31, 2013, purportedly authored by Bailey and sent to Ball. (Ex. D to Docket Item No. 39.) This letter appears to be in response to a letter from Ball, in which he directed several questions to her. These questions included, but were not limited to, the following subject matter: (1) the importance of sex in a relationship; (2) whether Bailey equated sex with love; and (3) how sex impacted Bailey's self-esteem. The defendant argues that Ball would not have sent a letter asking such intimate questions of someone who had sexually abused/assaulted him some seven months earlier. The court finds that this letter certainly could be damaging to Ball's claim, but it, again, is not the type of *irrefutable* evidence contemplated by *Scott* that can so blatantly contradict a plaintiff's version of events so as to utterly discredit it. Instead, this would be the province of a jury to decide the meaning of the letter, how it impacts Ball's credibility and what weight to give to it. *See Anderson*, 477 U.S. at 255.

Lastly, the defendant has offered a handwritten letter dated July 2, 2014, which Bailey states in her affidavit she received from Ball. (Ex. 2 to Docket Item No. 44.) The greeting in this letter is to "My Sexy White Chocolate," a nickname that Bailey claims Ball gave her. The letter is signed "Love Reggie," a name Bailey claims she used to refer to Ball. Throughout the letter, the sender refers to the recipient with the terms of endearment "Boo" and "Babe." Also in the letter, the sender attempts to console the recipient regarding an upcoming criminal case, stating "It's not like it's rape, robbery or murder Boo and your record is not that of a harden[ed] criminal." The defendant argues that this letter and, particularly, the statement regarding the recipient's behavior not constituting rape, is blatantly contradictory to Ball's allegations of sexual abuse/assault against Bailey. Again, however, I disagree. This type of evidence simply is not on equal footing with a videotape, which can serve as irrefutable evidence, erasing any question of doubt

as to the accuracy or inaccuracy of a plaintiff's version of events. Admittedly, as with the December 2013 letter, statements within this July 2014 letter could be damaging to Ball's claim. However, it is for a jury to decide the weight to give this evidence in deciding Ball's claim, not for this court on a summary judgment motion. *See Anderson*, 477 U.S. at 255.

For all of the above-stated reasons, I find that the defendant's reliance on *Scott* is misplaced, and Ball's version of the facts contained in the Complaint is not so utterly discredited that no reasonable jury could believe him. Therefore, the court must view the facts in the light most favorable to Ball in deciding whether summary judgment in favor of the defendant is appropriate. For the reasons that follow, I find that genuine issues of material fact exist, thereby precluding the entry of summary judgment.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the "violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation [of that right] was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In his § 1983 claim, Ball alleges that Bailey's actions constituted cruel and unusual punishment in violation of his Eighth Amendment rights while acting in her job as a VDOC employee. Furthermore, in a § 1983 claim against a state official under the Eighth Amendment, a plaintiff must demonstrate that (1) the alleged conduct is "objectively, sufficiently serious;" and (2) the prison official was "deliberately indifferent to the plaintiff's rights, health or safety" and had a "sufficiently culpable state of mind." *De'lonta v. Clarke*, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

It is well-settled that sexual abuse of an inmate by a prison guard may violate the Eighth Amendment. *See Woodford v. Ngo*, 548 U.S. 81, 118 (2006) (Breyer, J., dissenting) (inmates sexually assaulted by guards have suffered grave deprivations of their Eighth Amendment rights); *Farmer*, 511 U.S. at 834 (violent assault in prison is not part of the penalty criminal offenders pay for their offenses). Nonetheless, not every allegation of sexual abuse is "objectively, sufficiently serious" for Eighth Amendment purposes. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997) ("[I]solated episodes of harassment and touching … are despicable ... . But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.") (citing *Farmer*, 511 U.S. at 833-34).[4] Courts must conduct a "fact-intensive, case-by-case inquiry to determine if the sexual abuse was sufficiently serious." *De'lonta*, 2013 WL 209489, at *4.

Here, I find Ball has alleged facts demonstrating that Bailey's alleged sexual abuse/assault of him is "objectively, sufficiently serious" under an Eighth Amendment analysis. In cases with what the court considers less serious allegations than those alleged here, courts have found an Eighth Amendment violation. *See Wood v. Beauclair*, 692 F.3d 1041, 1049-51 (9th Cir. 2012)

[4] As the court in *De'lonta* noted, there appears to be a division in the treatment of cases in which an inmate alleges sexual abuse by a prison guard. One group of cases follows the language in *Boddie* limiting Eighth Amendment claims to only "severe or repetitive" sexual abuse. *See De'lonta*, 2013 WL 209489, at *4 n.9 (quoting *Boddie*, 105 F.3d at 861). The second group of cases focuses on "contemporary standards of decency" and the utter lack of penological justification for sexual abuse of an inmate by a guard. *See De'lonta*, 2013 WL 209489, at *4 n.9 (citing *Wood v. Beauclair*, 692 F.3d 1041, 1050-51 (9th Cir. 2012); *Jacobs v. Durko*, 2007 WL 2769436, at *3-4 (W.D. Pa. Sept. 17, 2007); *Bromell v. Idaho Dep't of Corrs.*, 2006 WL 3197157, at *4 (D. Idaho Oct. 31, 2006)). Just as the court in *De'lonta* found, I also find no need to address this division, as Ball's allegations of sexual abuse/assault state an Eighth Amendment claim under either standard.

(allegations guard stroked inmate's unclothed penis for few seconds for guard's own gratification satisfied objective and subjective elements of Eighth Amendment claim); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (finding actionable constitutional claim based on detainee's allegation that guard spent five to seven seconds gratuitously fondling plaintiff's testicles and penis through plaintiff's clothing and then while strip searching him fondled his unclothed testicles for two to three seconds); *Calhoun v. DeTella*, 319 F.3d 936, 938-40 (7th Cir. 2003) (allegation that guards made "sexual ribald comments," forced inmate to perform "provocative acts" and "pointed their sticks toward his anal area while he bent over," all during a strip search, with no allegation of physical injury, stated an Eighth Amendment claim); *Schwenk v. Hartford*, 204 F.3d 1187, 1194, 1196-98 (9th Cir. 2000) (inmate stated Eighth Amendment claim where guard repeatedly requested oral sex, groped inmate's buttocks, exposed his genitals to inmate and forcibly pressed his exposed penis into inmate's clothed buttocks); *Berry v. Oswalt*, 143 F.3d 1127, 1133 (8th Cir. 1998) (finding sufficient evidence to support Eighth Amendment violation when guard attempted to perform nonroutine patdown searches on female inmate, propositioned her for sex, intruded upon her when she was not fully dressed and repeatedly made sexual comments to her); *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992) (allegations of performance of invasive patdown searches by guard almost daily for two months, during which guard conducted "a deliberate examination of the genitals, anus, lower stomach and thigh areas," were sufficient to survive summary judgment on inmate's § 1983 claim); *Jacobs v. Durko*, 2007 WL 2769436, at *3-4 (W.D. Pa. Sept. 17, 2007) (allegations of rough groping of inmate's buttocks and genitals on single occasion by guard, not in course of a patdown search and without any justification, may be sufficiently serious for Eighth Amendment purposes); *Bromell v. Idaho Dep't of Corrs.*, 2006 WL 3197157, at *4 (D. Idaho Oct. 31, 2006) (allegation that guard approached inmate from behind, placed his penis against inmate's clothed

buttocks, then squeezed inmate's pectoral muscles before squeezing inmate's presumably clothed genitals, states Eighth Amendment claim, observing that "uninvited sexual contact that is done maliciously and sadistically to cause harm and that does not advance any legitimate security interest is the type of conduct that is 'inconsistent with contemporary standards of decency' and, therefore, violates the Eighth Amendment") (citing *Schwenk*, 204 F.3d at 1196-97); *Morrison v. Eversley*, 205 F. Supp. 2d 234, 237, 242-43 (S.D. N.Y. 2002) (denying qualified immunity where female inmate alleged male guard entered cell at night and "sexually assaulted" her and that such conduct was part of an ongoing pattern and practice of male officers engaging in sexual contact with female inmates); *Thomas v. District of Columbia*, 887 F. Supp. 1, 3, 4-5 (D. D.C. 1995) (allegation that guard forcibly touched or attempted to touch inmate's penis twice, sexually harassed inmate and spread rumors that plaintiff was "a homosexual and a 'snitch'" was sufficiently serious); *Ojo v. Hillsborough Cnty. Dep't of Corrs.*, 2012 WL 4513944, at *2-3 (D. N.H. Sept. 25, 2012), report and recommendation approved by 2012 WL 4514005, *1 (D. N.H. Oct. 2, 2012) (allegations that guards intentionally "grabbed" an inmate's penis and/or testicles during a patdown search on four occasions stated a claim, albeit under the Fourteenth Amendment because the inmate was a pretrial detainee).

Here, Ball alleges that over an approximately two-month period, Bailey made several sexual remarks to him, rubbed and kissed him "every chance she got," grabbed his genitals, came to his cell requesting that he show her his penis, rubbed his buttocks, sent him sexually explicit photographs of herself, sent him love letters, performed oral sex on him four times and engaged in sexual intercourse with him five times, all over his objections and against his will. I find that he has alleged serious ongoing abuse that was both serious and repetitive. *See Boddie*, 105 F.3d at 861 ("[S]evere *or* repetitive sexual abuse of an inmate by a

prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation.") (emphasis added). That being the case, I find that, viewing the facts in the light most favorable to Ball, Bailey's alleged conduct qualifies as sufficiently serious even under the higher standard established in the *Boddie* line of cases. Thus, I find that Ball's allegations also survive summary judgment under the more lenient standard followed by the Ninth Circuit in *Wood*.

Next, the court further concludes that Ball has alleged facts on which the factfinder could determine that Bailey acted with a "sufficiently culpable state of mind." "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie*, 105 F.3d at 861 (citing *Hudson*, 503 U.S. at 6-7.) In sexual abuse or rape cases, "the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" *Giron v. Corrs. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The court cannot conceive of any legitimate law enforcement or penological purpose behind Bailey's alleged sexual comments and sharing of explicit photographs and love letters, let alone the instances of oral sex and actual sexual intercourse. Therefore, I find that Ball has alleged sufficient facts to demonstrate that Bailey's alleged conduct meets the requisite subjective element of an Eighth Amendment claim. Therefore, Ball has alleged sufficient facts to demonstrate that Bailey's alleged conduct meets both the objective and subjective elements of an Eighth Amendment claim. The evidence, as already set out herein, also reveals that there are genuine issues of material fact in dispute, precluding the entry of summary judgment in Bailey's favor.

For the reasons stated herein, the appropriate order will be entered denying the Motion. The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record and unrepresented parties.

DATED: July 29, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE